IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ULYSSIX TECHNOLOGIES, INC., | |
| *Plaintiff,* | |
| v. | Civil Action No.: ELH-10-02091 |
| ORBITAL NETWORK ENGINEERING, INC., et al., | |
| *Defendants.* | |

## MEMORANDUM OPINION

Ulyssix Technologies, Inc. ("Ulyssix") filed suit against Orbital Network Engineering, Inc. ("ONE") and Wyle Laboratories, Inc. ("Wyle"), to recover damages stemming, *inter alia*, from the alleged breach of a license agreement. After ONE filed an "Answer and Counter Claims,"[1] Ulyssix filed a "Motion To Dismiss ONE's Counterclaim And To Strike Its Affirmative Defenses" ("Motion," ECF 36), which ONE opposes. The issues have been fully briefed and the Court now rules pursuant to Local Rule 105.6, no hearing being necessary.

For the reasons that follow, I will: 1) grant Ulyssix's motion to strike affirmative defenses 1-8, without prejudice; 2) deny Ulyssix's motion with respect to affirmative defenses 9-16; 3) grant Ulyssix's motion to dismiss as to Count V of the Counterclaim, without prejudice; 4) deny Ulyssix's motion to dismiss the remaining counts of the Counterclaim; and 5) grant ONE twenty days to amend its answer and counterclaim.

## FACTUAL BACKGROUND[2]

---

[1] Wyle answered, but its answer is not at issue here.

[2] Given the posture of this case, the Court must "accept the well-pled allegations of the [counter] complaint as true," and "construe facts and reasonable inferences derived therefrom in the light most favorable to the [counter-]plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *see Boss v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 764 (4th Cir. 2003).

Ulyssix is a corporation organized under Maryland law, with its principal place of business in Frederick, Maryland. Compl. ¶ 4 (ECF 1). It "designs and manufactures components used in connection with devices that receive and transmit data emitted from rockets, aircraft, missiles, tanks and other devices." *Id.* ¶ 11. ONE is a privately owned corporation headquartered in California that provides aerospace system products, engineering, and technical services to the federal government, the military, and commercial clients. Answer and Countercl. ¶ 2, at 15 (ECF 32).

In late 2000, Ulyssix approached ONE about investing in Ulyssix, citing Ulyssix's digital signal processing expertise and representing that, as an investor, ONE would have access to Ulyssix's technology at a discounted price. *Id.* ¶ 3, at 15. Based on these representations, ONE invested $100,000 in Ulyssix, in exchange for 10,000 shares of Ulyssix's common stock, constituting a 10% ownership in Ulyssix. *Id.* ¶ 4, at 15. In connection with the transaction, ONE's president, David Lung, joined Ulyssix's board of directors. *Id.*

In 2004, Ulyssix entered into a "subcontract" with a division of L-3 Communications Corporation ("L-3 Com") to develop a receiver card that became known as the Ulyssix PCI-2070 receiver card. *Id.* ¶ 5, at 15. ONE understood its investment in Ulyssix to mean that it would have access to this card at favorable prices. *Id.* With the PCI-2070 in mind, along with Ulyssix's encouragement, ONE successfully bid on a contract to supply a telemetry system to a division of L-3 Com known as L-3 Com/IEC. *Id.* ¶ 6, at 16. [3] The pricing for that contract was based on ONE's favorable pricing arrangement with Ulyssix. Moreover, "ONE's proposed system for L-3 Com/IEC relied upon certain technical advantages of the Ulyssix PCI system." *Id.* According to ONE, when it bid on and entered into the telemetry system contract with L-3

_____

[3] Specifically, ONE avers that its decision was swayed by "Ulyssix's representations about the functionality of the Ulyssix PCI-2070 receiver card and its completion date." *Id.* ¶ 6, at 16.

Com/EIC, "Ulyssix knew ONE was relying on the completion and delivery of the . . . PCI-2070 receiver card." *Id.*

In late 2005, Ulyssix informed ONE that it no longer planned to develop the PCI-2070, and that it would not deliver PCI-2070 cards for the system sold by ONE to L-3 Com/IEC. *Id.* ¶ 7, at 16. Thereafter, on March 22, 2006, Ulyssix and ONE executed an agreement (the "License Agreement"), by which Ulyssix transferred the rights to the PCI-2070 receiver to ONE, in exchange for ONE's payment of $100,000 and its return of 10,000 shares of Ulyssix's common stock.[4] *Id.* ¶ 8. At a later time, in connection with ONE's development of the PCI-2070 card, Ulyssix agreed to provide limited consulting services, and granted ONE a limited license to certain proprietary bit sync and frame technology. *Id.* ¶ 8, at 16.

Based on representations made by Glenn Rosenthal, Ulyssix's president, ONE believed that it "had the right to obtain the nonfunctional PCI-2070 technology even though L-3 Com had also invested in its development." *Id.* ¶ 8, at 16. Pursuant to the License Agreement, ONE also understood that Ulyssix had provided ONE with the "unrestricted right to fix the nonfunctional PCI-2070 technology and use it for ONE's own . . . and that Ulyssix would not share in any future sale or license proceeds relating to a functioning PCI-2070 card." *Id.* ¶ 9, at 17. Nevertheless, ONE contends that Ulyssix refused to provide ONE with PCI-2070 design information that Ulyssix regarded as proprietary. *Id.* ¶ 12, at 17. Instead, Ulyssix insisted that ONE contract with Optimum Engineering to provide services to complete ONE's PCI-2070,

---

[4] Specifically, the License Agreement states: "Licensor grants to Licensee an exclusive license to use the Licensed Products specified on the Licensing Schedule to make, have made, use, offer to sell, sell, and otherwise commercialize PCI telemetry receivers . . . (the "PCI-2070 Receivers") and to grant sublicenses . . . ." Compl. Ex. A. It was ONE's understanding that ONE could complete and market the PCI-2070 card as ONE saw fit. *Id.* ¶¶ 8, 11, at 16-17.

which ONE did at its own expense.  *Id.*[5]

In 2006, some months after execution of the License Agreement, Ulyssix notified ONE that it could not use the name "PCI-2070," because L-3 Com was using that name in its development of a receiver card.  *Id.* ¶ 13, at 17.  Accordingly, ONE renamed its PCI-2070 receiver card "ONE 1011 Gen1."  *Id.*

According to ONE, Rosenthal repeatedly represented in a series of email exchanges that ONE owned the PCI-2070 design, and it could complete, modify, and market the card as it saw fit.  *Id.* ¶¶ 15-17, at 17-18.  For example, on May 10, 2006, Rosenthal responded to a technical support query from ONE by writing:  "ONE owns the design now.  Do whatever you want."  *Id.* ¶ 15, at 17.[6]  In an email sent by Rosenthal on June 9, 2006, to Tom Leisgang and Lung at ONE, *Id.* Ex. 2., Rosenthal wrote:  "ONE's ownership of the PCI-2070 allows ONE to develop any capability to the delivered receiver FPGA files.  Ulyssix fully expects ONE to add more capabilities . . . ."  *Id.* ¶ 16, at 18.  On March 15, 2007, an Optimum Engineering contractor wrote to Rosenthal to confirm that he could create and add code to a PCI-2070 disc and provide the resulting code to ONE, to which Rosenthal responded:  "This is 100% accurate.  ONE owns the CDROM and you have the ability to change anything."  *Id.* ¶ 17, at 18.

The License Agreement also provided ONE with the right to grant a sublicense.  Compl. ¶ 21.  In or about October 2007, "ONE informed Ulyssix that it was granting Wyle a sublicense to market the [PCI-2070]."  Compl. ¶ 20.  However, Rosenthal contacted Lung "to complain that ONE had passed Ulyssix's intellectual property to Wyle in violation of the parties' agreement."

---

[5] ONE stated in its Counterclaim:  "ONE does not know and was not provided access to the information provided by Ulyssix to Optimum Engineering to complete the PCI-2070 card." *Id.* ¶ 12.

[6] This email was sent to Bill Dalton regarding some "jumpers on the PCI-2070 card." *Id.* Ex. 1.

Answer and Countercl. ¶ 26, at 5.  Lung disagreed.  *Id.*  By letter of July 6, 2010, Ulyssix

accused ONE of violating the License Agreement.  Ulyssix demanded that Wyle and ONE cease

use of the PCI-2070 and that ONE remit all profits to Ulyssix.  *Id.* ¶ 29, at 5.  By letter dated July

28, 2010, ONE denied that it had violated the License Agreement.  *Id.* ¶ 32, at 5.

This suit followed.[7]  Ulyssix has asserted claims for breach of contract; violation of the

Maryland Uniform Trade Secrets Act, MD. CODE ANN., COM. LAW § 11-1201-11-1209 (2005

Repl. Vol.); conversion; and unjust enrichment.  According to Ulyssix, ONE agreed that "all

drawings, plans and other materials relating to [the PCI-2070] would be retained by ONE and

would not be shared."  Compl. ¶ 20.  However, Ulyssix learned in June 2010 that Wyle was

manufacturing and selling a receiver card that was substantially identical to ONE's 1011 Gen1

card.  *Id.* ¶ 22.  Moreover, Ulyssix believed that its PCI-SIG Consortium Vendor Identification

number was present in the Wyle design.  *Id.* ¶ 25.

In its "Answer And Counter Claims Against Ulyssix Technologies, Inc.," ONE

summarily asserted sixteen affirmative defenses.[8]  Ulyssix takes issue with all sixteen of them.

Motion 2.  In particular, ONE asserted as follows:

> FIRST DEFENSE:  The Complaint, and each cause of action therein, fail to state
> facts sufficient to constitute a cause of action against ONE.

---

[7] Jurisdiction is based on diversity of citizenship.  *See* 28 U.S.C. § 1332.  Where an action is based on diversity of citizenship, the relevant state law controls.  *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).  The Maryland Court of Appeals "has long recognized the ability of contracting parties to specify in their contract that the laws of a particular State will apply in any dispute over the validity, construction, or enforceability of the contract, and thereby trump the conflict of law rules that otherwise would be applied by the court."  *Jackson v. Pasadena Receivables, Inc.*, 398 Md. 611, 617, 921 A.2d 799, 803 (2007).  In the instant case, the License Agreement provides:  "The laws of the State of Maryland shall govern this Agreement, and all matters arising out of or relating to this Agreement."

[8] In its Answer, ONE admitted that "it provided to Wyle three ONE 1011 Gen 1.5 receiver boards that inadvertently contained Ulyssix's PIC-SIG Consortium Vendor Identification number."  Answer and Countercl. ¶ 25, at 4.

SECOND DEFENSE: The Complaint, and each cause of action therein, are barred by reason of plaintiff's unclean hands in connection with the events that are the subject of the complaint.

THIRD DEFENSE: The Complaint, and each cause of action therein, are barred by the equitable doctrine of estoppel.

FOURTH DEFENSE: The Complaint, and each cause of action therein, are barred by the equitable doctrines of waiver and/or laches.

FIFTH DEFENSE: The Complaint, and each cause of action therein, is barred to the extent that the License Agreement attached to the Complaint as Exhibit A, was unconscionable when made.

SIXTH DEFENSE: The Complaint, and each cause of action therein, are barred by the doctrine of frustration of purpose.

SEVENTH DEFENSE: The Complaint, and each cause of action therein, are barred as a result of a unilateral or mutual mistake of the contracting parties.

EIGHTH DEFENSE: The Complaint, and each cause of action therein, are barred by the applicable statute of limitations.

NINTH DEFENSE: The Complaint, and each cause of action therein, are barred because the contract alleged was subsequently modified by the parties.

TENTH DEFENSE: The Complaint, and each cause of action therein, are barred because Ulyssix consented to the alleged conversion.

ELEVENTH DEFENSE: The Complaint, and each cause of action therein, are barred because ONE's actions were privileged.

TWELFTH DEFENSE: The Complaint, and each cause of action therein, are barred because the items claimed to be owned by Ulyssix are in the public domain, subject to fair use, and/or generic.

THIRTEENTH DEFENSE: The Complaint, and each cause of action therein, are barred because ONE's alleged actions were licensed.

FOURTEENTH DEFENSE: The Complaint, and each cause of action therein, are barred because ONE's alleged actions were authorized by Ulyssix.

FIFTEENTH DEFENSE: The Complaint, and each cause of action therein, are barred because ONE made payment for the nonfunctioning PCI-2070 provided by Ulyssix.

SIXTEENTH DEFENSE: The Complaint, and each cause of action therein, are barred because Plaintiff has not suffered any damages and is not likely to suffer any damages as a result of the acts alleged in Plaintiff's Complaint.

In its Counterclaim, ONE lodged six counts against Ulyssix: constructive fraud; negligent misrepresentation; promissory estoppel/detrimental reliance; reformation/mutual mistake; reformation/unilateral mistake; and breach of contract. *Id.* 18-20. Ulyssix has challenged all six counts in its motion to dismiss.

## I. Motion to Dismiss the Counterclaim

Pursuant to FED. R. CIV. P. 12(b)(6), Ulyssix has moved to dismiss ONE's counterclaims on the ground that they fail to state plausible claims for relief.

Under FED. R. CIV. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To satisfy the minimal requirements of Rule 8(a)(2), the Complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The purpose of the Rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Id.* at 555-56 n.3 (citation omitted).

A defendant may test the adequacy of a complaint by way of a motion under Rule 12(b)(6). *German v. Fox*, 267 F. App'x 231, 233 (4th Cir. 2008). Both *Twombly*, 550 U.S. 544, and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), make clear that, in order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Iqbal*, 129 S. Ct. at 1953 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions . . . .'" (citation omitted)); *see also Simmons v. United Mort. & Loan Inv.*, No. 09-2147, 2011 WL 184356, at *10

(4th Cir. Jan. 21, 2011); *Andre v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

Although the plaintiff need not include "detailed factual allegations in order to satisfy" Rule 8(a)(2), the Rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555. Thus, a complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient under the Rule. *Id.* However, "[t]he issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183 (1984).

Notably, a motion pursuant to Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted). Nor is the court required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville*, 579 F.3d 380, 385-86 (4th Cir. 2009). Simply put, a plaintiff cannot prevail if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 129 S. Ct. at 1950.

### A. Counts I, II, and III, Generally

Fed. R. Civ. P. 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." In its "Memorandum In Support of Plaintiff's Motion To Dismiss ONE's Counterclaim And To Strike ONE's Affirmative Defenses" ("Memo.," ECF 36-1), Ulyssix argues that Rule 9(b)'s heightened pleading standards apply to ONE's counterclaims for constructive fraud (Count I); negligent misrepresentation

(Count II); and promissory estoppel (Count III), as all three claims are "based upon allegedly fraudulent promises." Memo. 9 & n.4.

With respect to these three counts,[9] Ulyssix contends that the claims are defective because ONE failed to aver (1) "what allegedly fraudulent statements were made by whom and when," (2) what actions ONE took that constituted reliance on its part, and (3) how Ulyssix could have caused any damages. *Id.* at 10-12. In its "Reply In Further Support Of Plaintiff's Motion To Dismiss ONE's Counterclaim And To Strike ONE's Affirmative Defenses" ("Reply," ECF 41), Ulyssix maintains that Rosenthal's emails are not actionable as fraud under Maryland law, as they are "his opinion as to the rights and responsibilities of the parties," as set forth in the License Agreement. Reply 4. Further, Ulyssix argues that "Mr. Rosenthal made no statement that in any way condones or authorizes ONE's subsequent modification of the completed PCI-2070 design, its unauthorized transfer of the design to Defendant Wyle Laboratories, Inc., or any other activity not expressly authorized by the License." *Id.* at 5.

In addition, Ulyssix urges dismissal of counts I, II, and III because they "reveal a lack of reasonable reliance." Memo. 12. According to Ulyssix, the License Agreement explicitly contained all the terms and rights relevant to the parties, as well as the requirement that all modifications be made in writing and signed by both parties. *Id.* at 13. Ulyssix also takes issue, generally, with ONE's reliance on Rosenthal, as he is not an attorney, and his opinions "sharply contrasted with" the actual terms of the License Agreement. Reply 6. Further, Ulyssix avers that any alleged reliance by ONE on Rosenthal's statements was not to ONE's detriment, as

---

[9] In its Memo., 9-10, Ulyssix characterizes the three claims of action as follows:

Although the elements of these causes of action differ, each count requires ONE to plead facts sufficient to demonstrate: (1) a specific act omission [sic] which it contends constituted the fraud; (2) that it reasonably relied to its detriment on those specific statement [sic] or acts; and (3) that it suffered damages proximately caused by the misrepresentation.

ONE "received, and continues to derive, all the benefits associated with the development of products based on [the alleged] unauthorized design modification." *Id.* at 5.

With regard to ONE's claim for constructive fraud, Ulyssix asserts that ONE failed to plead a special relationship of "trust and confidence" between the parties. Memo. 13-14. Ulyssix characterizes its relationship with ONE as an "arms-length" one, and therefore it claims that it did not owe ONE any "confidential" or "fiduciary" duty within the realm of a constructive fraud claim. Reply 7.

In its "Opposition To Motion To Dismiss Counterclaim And To Strike Its Affirmative Defenses" ("Opposition," ECF 39), ONE disputes that its negligent misrepresentation and promissory estoppel claims must meet the heightened pleading standard of Rule 9(b), but does not contest that Rule 9(b) applies to Count I. In any event, it maintains that counts I, II, and III of its Counterclaim satisfy Rule 9(b)'s requirements. Opposition 17.

With regard to Ulyssix's argument that ONE did not reasonably rely on Rosenthal's representations in his emails, ONE states: "[B]ut for those representations, ONE would not have incurred substantial expense developing the PCI-2070 card." *Id.* at 16. ONE also argues that the License Agreement did *not* contain "all" the rights and terms between the parties. *Id.* at 20. It maintains that the License Agreement was at odds with the completely inconsistent representations made by Rosenthal, *after* the date of the License Agreement. *Id.* at 20-21. ONE points to the bit sync and frame technology for which it was granted a limited license outside the License Agreement. Further, ONE notes that the License Agreement purported to grant ONE an "exclusive license," yet ONE was directed not to use the name "PCI-2070" because of L-3 Com's use of that name. *Id.* at 20 n.9.

ONE insists that it *has* alleged facts sufficient to establish a special relationship giving

rise to ONE's trust and confidence in Ulyssix. *Id.* at 14. In support of its contention, ONE cites Ulyssix's promises of "special and guaranteed access to . . . technical innovations at discounted prices," as well as ONE's 10% shareholder stake and the board position Lung held with Ulyssix. *Id.* at 14-15, 22. ONE also avers that Ulyssix encouraged ONE to bid on technology contracts that would foster the business relationship between ONE and Ulyssix. *Id.* at 15, 22.

### 1. Count I — Constructive Fraud

"Constructive fraud is: '[A] breach of a legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence or to injure public interests. Neither actual dishonesty nor intent to deceive is an essential element of constructive fraud.'" *Saint Annes Dev. Co. v. Trabich*, No. WDQ-07-1056, 2010 WL 3369368, at *9 (D. Md. Aug. 23, 2010) (quoting *Ellerin v. Fairfax Sav., F.S.B.*, 337 Md. 216, 236, 652 A.2d 1117, 1127 n. 11 (1995)); *accord Canaj, Inc. v. Baker and Div. Phase III*, 391 Md. 374, 421-22, 893 A.2d 1067, 1095 (2006). Constructive fraud "'usually arises from a breach of duty where a relationship of trust and confidence exists.'" *Crawford v. Mindel*, 57 Md. App. 111, 469 A.2d 454, 459 (1984); *accord Saint Annes Dev. Co.*, 2010 WL 3369368, at *9.

The Maryland Court of Special Appeals has explained that "'a confidential relationship exists where one party has dominion over the other person, and the relationship is such that the person with greater influence is expected to act in the best interest of the other person.'" *Brass Metal Prods. v. E-J Enters.*, 189 Md. App. 310, 356, 984 A.2d 361, 388 (2009). "Such relationships may arise when 'a party is, under the existing circumstances, justified in believing that the other party will not act in a manner adverse or inconsistent with the reposing party's interest or welfare.'" *Saint Annes Dev. Co.*, 2010 WL 3369368, at *10 (quoting *Midler v.*

*Shapiro*, 33 Md. App. 264, 268, 364 A.2d 99, 103 (1976)).

However, "'[t]he mere fact that one reposes trust and confidence in another's integrity does not create a confidential relationship.'" *Brass Metal*, 189 Md. App. at 359, 984 A.2d at 390 (citation omitted). Ordinarily, "business relationships are not confidential relationships unless '[c]ertain factors above and beyond a typical business relationship' exist." *Saint Annes Dev. Co.*, 2010 WL 3369368, at 10 (alteration in original) (citation omitted). Thus, "arm's length transactions between parties seeking to further their own objectives are not consistent with a confidential relationship." *Id.* But, "a confidential relationship may exist when the parties have a close personal relationship that precedes the business relationship. Also, a confidential relationship may exist in a business relationship if one party gains influence and superiority as a result of the confidence placed in him by the other party." *Id.* (citations omitted).

With these parameters in mind, I am of the view that, as to Count I, ONE has pled facts sufficient to comply with Rule 9(b)'s requirements. "'A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied: (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts.'" *U.S. Home Corp. v. Powers*, No. WMN-09-2807, 2010 U.S. Dist. LEXIS 28514, *18-19 (D. Md. Mar. 25, 2010) (citation omitted). ONE based its claim on the representations, encouragement, and promises allegedly made by Ulyssix, as well as ONE's previous ownership stake and directorship role as to Ulyssix. In my view, these combined allegations are sufficient to plead a special relationship.

Moreover, as to Count I (as well as Counts II and III), ONE has sufficiently pled that it relied on Ulyssix's representations and incurred a legal detriment. I am unpersuaded that ONE's reliance was unreasonable as a matter of law, given the claim that the License Agreement did not

account for all of the parties' dealings,[10] *and* the representations on which ONE relied came from

Ulyssix's president. Ulyssix has been adequately put on notice of the particular circumstances

on which ONE's claim rests.

### 2. *Count II — Negligent Misrepresentation*

Despite Ulyssix's assertion to the contrary, "a claim of negligent misrepresentation under

Maryland law does not contain an essential showing of fraud." *Balt. Cnty. v. Cigna Healthcare*,

238 F. App'x 914, 921 (4th Cir. 2007). Accordingly, ONE's claim need not satisfy Rule 9(b)'s

particularity requirement. Instead, it will be considered under the pleading standard ordinarily

applicable to a Rule 12(b)(6) motion, discussed earlier.

The Maryland Court of Appeals has explained that, generally, "negligent

misrepresentation arises when the defendant owes a duty of care in communicating information

to the plaintiff and that duty is breached, causing pecuniary or personal injury to the plaintiff."

*Griesi v. Atl. Gen. Hosp. Corp.*, 360 Md. 1, 11, 756 A.2d 548, 553 (2000). The elements of a

negligent misrepresentation claim are as follows, *id.*:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false
> statement; (2) the defendant intends that his statement will be acted upon by the
> plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on
> the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff,
> justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers
> damage proximately caused by the defendant's negligence.

To be sure, "[a] claim sounding in negligence requires that the defendant owe the

plaintiff a duty of care." *Id.* In *Jacques v. First National Bank of Maryland*, 307 Md. 527, 515

A.2d 756 (1986), the Maryland Court of Appeals said: "In determining whether a tort duty

should be recognized in a particular context, two major considerations are: the nature of the harm

---

[10] The License Agreement did not cover the bit sync and frame technology to which ONE was granted a limited license. Moreover, the License Agreement purported to grant ONE an "exclusive license," but ONE was, at a later time, directed not to use the name "PCI-2070" because of L-3 Com's use of that name.

likely to result from a failure to exercise due care, and the relationship that exists between the parties." *Id.* at 535, 515 A.2d at 759.  The court continued:  "Where the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability.  This intimate nexus is satisfied by contractual privity or its equivalent."[11]  *Id.* at 534-35, 515 A.2d at 759-60; *see also Griesi*, 360 Md. at 12-13, 756 A.2d at 554.

In analyzing whether there is an intimate nexus giving rise to tort liability, the court is guided by several factors:

> "Liability [for negligent misrepresentation] arises only where there is a duty, if one speaks at all, to give the correct information.  And that involves many considerations.  There must be knowledge, or its equivalent, that the information is desired for a serious purpose; that he to whom it is given intends to rely and act upon it; that, if false or erroneous, he will because of it be injured in person or property.  Finally, the relationship of the parties, arising out of contract or otherwise, must be such that in morals and good conscience the one has the right to rely upon the other for information, and the other giving the information owes a duty to give it with care.  An inquiry made of a stranger is one thing; of a person with whom the inquirer has entered, or is about to enter, into a contract concerning the goods which are, or are to be, its subject, is another."

*Griesi,* 360 Md. at 13-14, 756 A.2d at 555 (citation omitted).

In its claim for negligent misrepresentation, ONE alleged that "Ulyssix owed ONE a special duty of care due to the relationship of the parties when it negligently represented that ONE would own the PCI-2070 design, and the other misrepresentations set forth herein." Answer and Countercl. ¶ 21, at 19.  In my view, ONE has sufficiently pled an intimate nexus

---

[11] In making its determination that contractual privity can give rise to a tort duty of due care, the *Jacques* Court reasoned:  "[A]n inverse correlation exists between the nature of the risk on one hand, and the relationship of the parties on the other.  As the magnitude of the risk increases, the requirement of privity is relaxed—thus justifying the imposition of a duty in favor of a large class of persons where the risk is of death or personal injury."  307 Md. at 537, 515 A.2d at 761.  However, "as the magnitude of the risk decreases, a closer relationship between the parties must be shown to support a tort duty.  Therefore, if the risk created by negligent conduct is no greater than one of economic loss, generally no tort duty will be found absent a showing of privity or its equivalent." *Id.*

based on contractual privity. Moreover, given the relationship of the parties, as set forth in ONE's "General Allegations" (i.e., the 10% ownership interest and Lung's position on Ulyssix's board of directors), as well as Rosenthal's capacity as president of Ulyssix, I believe that ONE has sufficiently averred that it had "the right to rely" on Ulyssix's representations. As such, the allegations are sufficient to state a claim for negligent misrepresentation.

### 3. Count III — Promissory Estoppel/Detrimental Reliance

Ulyssix asserts that ONE's promissory estoppel claim is "based upon allegedly fraudulent promises and is therefore more properly treated as a fraud claim." Memo. 9 n.4. ONE, for its part, notes that Ulyssix has not cited any Fourth Circuit or Maryland federal authority stating that a promissory estoppel claim requires compliance with FED. R. CIV. P. 9(b).

"In evaluating whether a cause of action must be pled with particularity, a court should examine whether the claim requires an essential showing of fraud." *Cigna Healthcare*, 238 F. App'x at 921. The elements of a promissory estoppel claim are as follows: (1) "a clear and definite promise;" (2) "where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee;" (3) "which does induce actual and reasonable action or forbearance by the promisee;" and (4) "causes a detriment which can only be avoided by the enforcement of the promise." *Mogavero v. Silverstein*, 142 Md. App. 259, 273, 790 A.2d 43, 51 (2002).

The elements of a promissory estoppel claim do not, on their own, sound in fraud. Count III of the Counterclaim states: "Ulyssix repeatedly promised that ONE owned the nonfunctional PCI-2070 design and could do with it as ONE saw fit. In making such promises, Ulyssix understood that ONE would rely upon those promises to take action to ONE's detriment." Nowhere does ONE's cause of action sound in fraud; the mere fact that another count in the

Counterclaim raises a claim based on fraud does not transform every claim into one based on fraud. ONE's factual allegations are sufficient to state a plausible claim for promissory estoppel.

    *4.  Count IV — Reformation/Mutual Mistake; Count V — Reformation/Unilateral Mistake*

       In its Counterclaim, ONE seeks to reform the License Agreement based on theories of mistake. Answer and Countercl. ¶¶ 25-27, at 19-20. Ulyssix contends that ONE failed to allege facts sufficient to establish the elements of reformation, an equitable remedy. Memo. 16. In making this assertion, Ulyssix points to the burden on a party seeking reformation: "A proper case for the reformation of instruments must be made by the pleadings, and, in order to make out a good cause of action, the pleading should allege in clear . . . language . . . every element necessary to entitle the complainant to equitable relief." *LaSalle Bank, N.A. v. Reeves*, 173 Md. App. 392, 412, 919 A.2d 738, 750 (2007) (alterations in original). Ulyssix also complains that "ONE refuses to clarify precisely how it would have this Court 'reform' the License." Reply 8.

       According to Ulyssix, ONE's count for reformation based on mutual mistake "fails to account for the fact that [ONE] fully performed under the contract it claims was flawed until Ulyssix sued for breach." Memo. 16. Further, Ulyssix avers that ONE's count for reformation based on unilateral mistake involves a claim of duress that ONE does not factually support. *Id.* at 16.

       ONE counters that "it has more than sufficiently alleged facts to assert a plausible claim for reformation." Opposition 10. It contends that its performance pursuant to the License Agreement "was consistent with what the agreement actually was," *id.* at 13 n.7, and its claim for reformation is based on the understanding it believed it shared with Ulyssix as to the terms of that agreement. *Id.* at 13. In support of its position, ONE cites Rosenthal's representations "that Ulyssix granted ONE the unrestricted right to fix the nonfunctional PCI-2070 technology and to

use it as ONE's own." *Id.* at 11. Moreover, to support its claim that the License Agreement did not represent the parties' entire agreement, ONE cites the limited license to bit sync and frame technology, as well as the change of the name of the receiver card from "PCI-2070," to accommodate L-3 Com, which occurred after execution of the License Agreement. *Id.*

The party seeking reformation has the burden of establishing that "(1) the contract as written should not be enforced, either because of a mutual mistake, or duress or inequitable conduct, and (2) 'there is clear, convincing and satisfying proof of a mutual understanding and bargain that has not been accurately expressed.'" *Jaguar Land Rover North America, LLC v. Manhattan Imported Cars, LLC*, No. DKC 08-1599, 2010 U.S. Dist. LEXIS 95828, at *23-24 (D. Md. Sept. 14, 2010) (quoting *City of Baltimore v. De Luca-Davis Constr. Co.*, 210 Md. 518, 524, 124 A.2d 557, 560 (1956)). Under Maryland law, "courts will not reform or rescind . . . contracts without the consent of the parties, when there is no fraud, misrepresentation, mistake [of fact[12]], undue influence, or fiduciary relation shown to exist, or unless the equities are such that they should not be enforced." *Julian v. Buonassissi*, 414 Md. 641, 667 n.15, 997 A.2d 104, 119 (2010).

With regard to mutual mistake, the Maryland Court of Appeals has stated: "It is a settled principle that a court of equity will reform a written instrument to make it conform to the real intention of the parties, when the evidence is so clear, strong and convincing as to leave no reasonable doubt that a mutual mistake was made in the instrument contrary to their agreement." *Hoffman v. Chapman*, 182 Md. 208, 210, 34 A.2d 438, 439 (1943); *accord Hearn v. Hearn*, 177 Md. App. 545, 541, 936 A.2d 400, 410 (2007). However, where there is only a unilateral mistake, a court will not reform a contract in the absence of "intentional, culpable conduct, such

---

[12] In Maryland, a mistake of law is not a ground for reformation. *Hoffman v. Chapman*, 182 Md. 208, 213, 34 A.2d 438, 441 (1943); *accord Janusz v. Gilliam*, 404 Md. 524, 536, 947 A.2d 560, 567 (2008).

as fraud, duress or undue influence." *Creamer v. Helferstay*, 294 Md. 107, 121, 448 A.2d 332, 339 (1982).

A "mistake" is "[a]n erroneous belief as to the contents or effect of a writing that expresses the agreement." RESTATEMENT (SECOND) OF CONTRACTS § 151 (1981). Of import here, "[t]he word 'mistake' is not used . . . , as it is sometimes used in common speech, to refer to an improvident act, including the making of a contract, that is the result of such an erroneous belief." *Id.*; *accord* 27 WILLISTON ON CONTRACTS § 70:1 (Richard A. Lord ed., 4th ed. 2003).[13]

"A well-pleaded claim grounded on mistake should include averments of what was intended, what was done, and how the mistake came to be made." 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1299 (3d ed. 2004) ("Wright & Miller"). Wright & Miller have explained:

> Inasmuch as the second sentence of Rule 9(b) provides that intent and other conditions of mind may be averred generally, and since the particularity requirement is liberally construed when information as to the causative factors of the error is peculiarly within the knowledge of the opposing party, the pleading requirement set out in Rule 9(b) is not overly difficult to meet.

*Id.* (footnote omitted). Moreover, "unlike the case law on pleading fraud, few federal courts have had occasion to conclude that mistake was pleaded with insufficient particularity." *Id.*

As to Count IV, ONE has adequately stated a claim for reformation based on mutual

---

[13] "Generally, a mistake of fact occurs when a person understands the facts to be other than they are. A mistake, or error, of fact takes place when some material fact which really exists is unknown, or when some essential fact which is supposed to exist really does not exist." 17A C.J.S. *Contracts* § 147(2010) (footnote omitted). "When considering whether a contract contains a mistake, the court is concerned with whether a party signed a document that unbeknownst to him or her did not express the agreement that the parties had reached." *Id.*; *see* 27 WILLISTON ON CONTRACTS, *supra*, § 70:1 ("An erroneous belief as to the contents or effect of a writing that expresses the agreement is . . . a mistake."). "[T]he inquiry focuses on the intention of the parties to the contract and not on knowledge gained subsequent to its execution." *Creamer v. Helferstay*, 294 Md. 107, 127, 448 A.2d 332, 342 (1982) (alteration in original); *see* 27 WILLISTON ON CONTRACTS, *supra*, § 70:1 ("[T]he erroneous belief must relate to the facts as they exist at the time of the making of the contract.").

mistake.  ONE's cause of action incorporates its "General Allegations" section, which details the parties' interactions pursuant to the License Agreement.  Among these allegations are the representations of Rosenthal made on behalf of Ulyssix, which underpin the following theory of mutual mistake:  at the time of the execution of the License Agreement, ONE and Ulyssix intended that ONE would own the PCI-2070 design exclusively and would hold the right to complete, modify, and market it as ONE saw fit.  Such a shared understanding would stand in stark contrast to the License Agreement as now interpreted by Ulyssix.  As such, these factual allegations are sufficient to state a claim for reformation based on mutual mistake.

Count V reads as follows:  "Ulyssix prepared and presented the License Agreement as reflecting the agreement of the parties, and insisted ONE execute it without modification.  Believing the contract to reflect the parties' agreement, and/or under duress, ONE did so.  To enforce the License Agreement as asserted by Ulyssix would be unconscionable."  Answer and Countercl. ¶ 27, at 20.

As indicated, duress may support a claim for reformation based on unilateral mistake.  Although Count V expressly incorporates all of the paragraphs preceding it, Ulyssix is correct in noting that those paragraphs do not contain any factual allegations to support a claim of duress.[14]  Therefore, I will dismiss this count, with leave to amend.

### 5.  *Count VI — Breach of Contract*

Ulyssix avers that ONE's breach of contract claim is barred by the statute of limitations, because Ulyssix's alleged breaches occurred in 2006, when the License Agreement was signed, and the Counterclaim was not filed until October 2010.  Memo. 17.  In its view, "when ONE 'discovered' [sic] 'true nature of the agreement' is of no moment."  Reply 9.  Rather, Ulyssix

_____

[14]  As noted above, inequitable conduct is also grounds for reformation of an instrument based on unilateral mistake.  However, ONE only alleged duress in the Counterclaim, which it did not sufficiently plead.

insists that any claim filed by ONE after December 31, 2009, is untimely.

ONE maintains that, under Maryland's "discovery rule," its claim for breach of contract was timely filed. According to ONE, its "conduct from 2006 until 2010 was consistent with its understanding of the agreement it reached with Ulyssix – it was permitted to modify the PCI-2070 card and sell it as ONE saw fit." Opposition 24-25. Moreover, it claims that it "could only discover Ulyssix's breach when Ulyssix first took the position that the License Agreement prohibited the very conduct Ulyssix authorized," i.e., modifying the PCI-2070 cards. *Id.* at 25.

In general, statutes of limitations represent a legislative policy determination of an appropriate and reasonable time for a person of ordinary diligence to initiate a legal action. *See Pennwalt Corp. v. Nasios*, 314 Md. 433, 437, 550 A.2d 1155, 1158 (1988); *Goldstein v. Potomac Elec. Power Co.*, 285 Md. 673, 684, 404 A.2d 1064, 1069 (1979).[15] These statutes "are designed to balance the competing interests of each of the potential parties as well as the societal interests involved." *Pierce v. Johns-Manville Sales Corp.*, 296 Md. 656, 665, 464 A.2d 1020, 1026 (1983).

Section 5-101 of the Courts and Judicial Proceedings Article of the Maryland Code generally provides a civil litigant with three years to file suit, dating from when the action accrues. *See Am. Gen. Assurance Co. v. Pappano*, 374 Md. 339, 348, 822 A.2d 1212, 1218 (2003); *Hecht v. Resolution Trust Corp.*, 333 Md. 324, 333, 635 A.2d 394, 399 (1994). "Historically, the general rule in Maryland was that a cause of action accrued on the date the wrong was committed," regardless of whether the plaintiff knew or should have known of the wrong. *Hecht*, 333 Md. at 334, 635 A.2d at 399. However, Maryland now applies the discovery rule to the concept of accrual. *See Bank of N.Y. v. Sheff*, 382 Md. 235, 244, 854 A.2d 1269, 1275

---

[15] Statutes of limitations are matters of "substance," to be governed by state law where an action is based on diversity. *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 111-12 (1945).

(2004); *Pappano*, 374 Md. at 351, 822 A.2d at 1219. That rule was adopted to address the "unfairness inherent in charging a plaintiff with slumbering on rights not reasonably possible to ascertain . . . ." *Hecht*, 333 Md. at 334, 635 A.2d at 399; *see Goodman v. Prax Air, Inc.*, 494 F.3d 458, 465 (4th Cir. 2007).

Under the discovery rule, "a cause of action accrues when a plaintiff in fact knows or reasonably should know of the wrong." *Hecht*, 333 Md. at 334, 635 A.2d at 399. The effect of the discovery rule is that it "tolls the accrual of the limitations period until the time the plaintiff discovers, or through the exercise of due diligence, should have discovered, the injury." *Frederick Road Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 95-96, 756 A.2d 963, 973 (2000). The discovery rule is generally applicable to all civil causes of action, *Poffenberger v. Risser*, 290 Md. 631, 636, 431 A.2d 677, 680 (1981), including breach of contract claims. *Bacon & Assocs., Inc. v. Rolly Tasker Sails (Thailand) Co.*, 154 Md. App. 617, 636, 841 A.2d 53, 65 (2004); *see Jones v. Hyatt Ins. Agency, Inc.*, 356 Md. 639, 648, 741 A.2d 1099, 1103-04 (1999).

Of import here, the discovery rule "does not contemplate constructive notice." *Anne Arundel Cnty. v. Halle Dev., Inc.*, 408 Md. 539, 562, 971 A.2d 214, 227 (2009); *see Benjamin v. Union Carbide Corp.*, 162 Md. App. 173, 193, 873 A.2d 463, 474 (2005), *aff'd*, 394 Md. 59, 904 A.2d 511 (2006). Regarding the "nature of the knowledge necessary, under the discovery rule, to start the running of the limitations period," the Court of Appeals has stated:

> [T]he discovery rule contemplates actual knowledge—that is express cognition, or awareness implied from knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry (thus, charging the individual) with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued.

*Poffenberger,* 290 Md. at 636-37, 431 A.2d at 680-81 (internal quotation marks omitted); *accord Halle Dev., Inc.*, 408 Md. at 562, 971 A.2d 227.

Ordinarily, "[b]ecause the term 'accrues' is not defined in the statute, the question of when a cause of action accrues is left to judicial determination." *Pierce*, 296 Md. at 664, 464 A.2d 1020; *see Frederick Rd. Ltd. P'ship*, 360 Md. at 95, 756 A.2d at 973; *United Parcel Serv., Inc. v. People's Counsel for Balt. Cnty.*, 336 Md. 569, 579, 650 A.2d 226 (1994). But, depending upon the nature of the assertions with respect to the limitations plea, resolution of whether the action is barred may be one of law, one of fact, or one of law and fact. *Frederick Rd. Ltd. P'ship*, 360 Md. at 95, 756 A.2d at 973; *see also CSX Transp., Inc. v. Miller*, 159 Md. App. 123, 150, 858 A.2d 1025, 1040-41 (2004) (examining the distinction between accrual as a matter of law and accrual as a matter of fact, and concluding that "the question was, indeed, one of fact for the jury to resolve"). If "the viability of a statute of limitations defense hinges on a question of fact . . . , the factual question is ordinarily resolved by a jury, rather than by a court." *Does v. Archdiocese of Wash.*, 114 Md. App. 169, 178, 689 A.2d 634, 639 (1997); *see Sheff*, 382 Md. at 244, 854 A.2d at 1275; *Moreland v. Aetna U.S. Healthcare, Inc.*, 152 Md. App. 288, 296, 831 A.2d 1091, 1095 (2003).

In my view, ONE has the better of the argument. ONE has sufficiently averred that the parties' understandings of the contract were *not* the same; ONE claims it did not know that it could not "modify the PCI-2070 card and sell it as ONE saw fit." Rosenthal's email representations underscored ONE's understanding of the License Agreement. Therefore, ONE has sufficiently pled that it had no notice of Ulyssix's contrary position until Ulyssix complained that ONE was not authorized to modify the PCI-2070 card. It follows that ONE's breach of contract count is not facially barred by the statute of limitations.[16]

---

[16] The parties also dispute, via footnotes, ONE's claim that Ulyssix breached a "duty of good faith and fair dealing." Given the factual background regarding the representations made by Rosenthal and the foregoing analysis as to the other counts in ONE's Counterclaim, ONE's breach of contract claim is plausible.

II.  Motion to Strike Affirmative Defenses

Ulyssix urges the Court to apply the *Twombly* and *Iqbal* plausibility standard in evaluating the sufficiency of ONE's affirmative defenses.  Reply 10.  It asserts that ONE's affirmative defenses do not satisfy that standard, because they lack sufficient factual allegations to provide Ulyssix with "meaningful notice" of the facts and circumstances of ONE's defenses.  Memo. 17.  Moreover, Ulyssix avers that the equitable doctrines asserted by ONE (estoppel, laches, unclean hands, and waiver) are not pled with the requisite legal elements to establish them as defenses.  *Id.* at 18-19.

ONE has not responded to Ulyssix's position concerning the applicability of the plausibility standard.  Rather, it insists that its affirmative defenses contain adequate factual allegations to provide notice to Ulyssix of its defenses.  Opposition 26.  It looks to the factual allegations in its Counterclaim to support its affirmative defenses, including those based in equity.  *Id.* at 25.

*A.  Pleading Standards*

Under FED. R. CIV. P. 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Nevertheless, "Rule 12(f) motions are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic."  *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir.2001) (internal citations and quotations omitted).  As such, "[w]hen reviewing a motion to strike, 'the court must view the pleading under attack in a light most favorable to the pleader.'"  *Piontek v. Serv. Ctrs. Corp.*, No. PJM 10-1202, 2010 U.S. Dist. LEXIS 117843, at *8-9 (D. Md. Nov. 5, 2010) (citation omitted).  If a motion to strike an affirmative defense is granted, the court will ordinarily give the defendant

leave to amend. *Topline Solutions, Inc. v. Sandler Sys.*, No. L-09-3102, 2010 U.S. Dist. LEXIS 76174, at *1 (D. Md. July 27, 2010) (citing 5C Wright & Miller, *supra*, § 1381).

To date, neither the Supreme Court nor the Fourth Circuit has indicated whether the heightened pleading standard of *Twombly* and *Iqbal* applies to affirmative defenses. However, many district courts have considered the issue, and have determined that *Twombly* and *Iqbal* are applicable to the pleading of affirmative defenses. *See, e.g.*, *Piontek v. Serv. Ctrs. Corp.*, 2010 U.S. Dist. LEXIS 117843, at *9; *Francisco v. Verizon S., Inc.*, No. 09-cv-737, 2010 U.S. Dist. LEXIS 77083, at *23-24 (E.D. Va. July 29, 2010); *Topline Solutions, Inc. v. Sandler Sys.*, 2010 U.S. Dist. LEXIS 76174; *Bradshaw v. Hilco Receivables, LLC*, No. RDB-10-113, 2010 U.S. Dist. LEXIS 75553, at *9 (D. Md. July 27, 2010); *Safeco Ins. Co. of Am. V. O'Hara Corp.*, No. 08-CV-10545, 2008 U.S. Dist. LEXIS 48399, at *2-3 (E.D. Mich. June 25, 2008); *Palmer v. Oakland Farms, Inc.*, No. 10-cv-00029, 2010 U.S. Dist. LEXIS 63265, at *15-17 (W.D. Va. June 24, 2010); *see also* Melanie A. Goff & Richard A. Bales, *A "Plausible" Defense: Applying* Twombly *and* Iqbal *to Affirmative Defenses*, 34 AM. J. TRIAL ADVOC. (forthcoming 2011) (manuscript at 17), *available at* http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1737805 (stating that "a majority of courts have found that the standard created by *Twombly* and *Iqbal* applies to affirmative defenses").

I recognize that there are differences in the language of Rule 8(a), Rule 8(b), and Rule 8(c), which could suggest that the plausibility standard is inapplicable to affirmative defenses. For example, Rule 8(a)(2), pertaining to claims for relief, requires "a short and plain statement of the claim showing that the pleader is entitled to relief," while Rule 8(b)(1)(A), captioned "Defenses; Admissions and Denials," merely requires a party to "state in short and plain terms its defenses to each claim." Nor does Rule 8(c), governing affirmative defenses, mention a factual

showing.  Nevertheless, these differences do not persuade me to reject the plaintiff's position. [17]

What the court said in *Palmer* resonates here:

> On its face, the argument accepted by the majority of courts extending the "plausibility" pleading standard of *Twombly* and *Iqbal* to defensive pleadings is compelling.  As the plaintiff argues, it neither makes sense nor is it fair to require a plaintiff to provide the defendant with enough notice that there is a plausible, factual basis for her claim under one pleading standard and then permit the defendant under another pleading standard simply to suggest that some defense may possibly apply in the case.

2010 U.S. Dist. LEXIS 63265, at *13.

Indeed, "it would be incongruous and unfair to require a plaintiff to operate under one standard and to permit the defendant to operate under a different, less stringent standard." *Topline Solutions, Inc.*, 2010 U.S. Dist. LEXIS 76174, at *2.  Moreover, "[b]oilerplate defenses clutter the docket and, further, create unnecessary work. . . . Rule 15 allows for appropriate amendments and counsel should therefore feel no need . . . to window-dress pleadings early for fear of losing defenses later."  *Safeco Ins. Co. of Am. V. O'Hara Corp.*, 2008 U.S. Dist. LEXIS 48399, at *2-3; *see Francisco v. Verizon S., Inc.*, No. 3:09cv737, 2010 WL 2991059 (E.D. Va. July 29, 2010); *see also* Goff & Bales, *supra*, at 21-22 (identifying three policies underlying the *Francisco* Court's decision to apply the *Twombly-Iqbal* standard to affirmative defenses:  (1) applying consistent standards to complaints and affirmative defenses, (2) a court's tendency to

---

[17] FED. R. CIV. P. 8(c) does not define the contours of permissible affirmative defenses. There is some debate as to whether certain defenses can serve as affirmative defenses.  For instance, compare *Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*, No. C08-04058 MHP, 718 F. Supp. 2d 1167, 2010 WL 2507769, at *6 (N.D. Cal. June 22, 2010) (striking affirmative defenses deemed to be mere denials, and stating that "failure to state a claim under Rule 12(b)(6) is more properly brought as a motion and not an affirmative defense"), with *Ruffin v. Frito-Lay, Inc.*, No. 09-CV-14664, 2010 WL 2663185, at *3 (E.D. Mich. June 10, 2010) (stating that "the failure-to-state-a-claim defense can be pleaded as an affirmative defense but may also be raised … by a motion to dismiss," and accordingly striking its use as a defense where the language was "boilerplate" and "conclusory").  *See also Home Mgmt. Solutions, Inc. v. Prescient, Inc.*, No. 07-20608-CIV, 2007 WL 2412834, at * 3 (S.D. Fla. Aug. 21, 2007) (finding that an affirmative defense that disputes the existence of damages should be treated as a specific denial rather than an affirmative defense).

liberally grant leave to amend, and (3) Form 30's examples).

To be sure, the heightened pleading standard does not require the assertion of all supporting evidentiary facts. *See Palmer*, 2010 U.S. Dist. LEXIS 63265, at *17. "At a minimum, however, some statement of the ultimate facts underlying the defense must be set forth, and both its non-conclusory factual content and the reasonable inferences from that content, must plausibly suggest a cognizable defense available to the defendant." *Id.*

Considering each of the challenged defenses in light of the foregoing principles and conclusions, I find as follows:

**Defense 1** (failure to state facts sufficient to constitute a cause of action) is merely conclusory, and lacks factual support. Therefore, it is stricken, without prejudice. *See Monster Daddy LLC v. Monster Cable Products, Inc.*, No. 6:10-1170-HMH, 2010 WL 4853661, at *8 (D.S.C. Nov. 23, 1010) (striking a similar affirmative defense).

**Defenses 2** (unclean hands)**, 3** (estoppel)**, and 4** (waiver and/or laches), set forth bare legal conclusions, without factual bases. Accordingly, they are stricken, without prejudice. *See id.* (striking factually deficient affirmative defenses of unclean hands, estoppel, and waiver); *Palmer*, 2010 U.S. Dist. LEXIS 63265, at *17-18 (striking factually deficient affirmative defenses of estoppel and laches).

**Defenses 5** (unconscionability), **6** (frustration of purpose), and **7** (unilateral or mutual mistake) are couched in conclusory language; each fails to contain a factual basis, and therefore each fails to provide fair notice to the plaintiff. *See Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, No. 09-61436-CIV-COHN/SELTZER, 2009 U.S. Dist. LEXIS 121709, at *3 (S.D. Fla. Dec. 11, 2009) (striking a factually deficient affirmative defense of mutual mistake). Accordingly, they are stricken, without prejudice.

**Defense 8** (statute of limitations) fails to reference the appropriate statute of limitations or the operative dates. As such, it must also be stricken, without prejudice. *Topline Solutions, Inc.*, 2010 U.S. Dist. LEXIS 76174, at *1 (striking a factually deficient statute of limitations affirmative defense).

**Defenses 9** (subsequent modification), **10** (consent), **11** (privilege), **12** (items claimed to be owned by Ulyssix are in the public domain, subject to fair use, and/or generic), **13** (licensing), **14** (authorization), **15** (payment), and **16** (damages not suffered) are, as pled, better characterized as specific denials. Accordingly, rather than striking them, the court will treat them as specific denials. *See* 5 Wright & Miller, *supra*, § 1269 ("[I]t is clear that an error in pleading a specific denial under the title of an affirmative defense will be disregarded when the answer plainly indicates the particular averment of the complaint that the defendant seeks to place in issue.").

<u>CONCLUSION</u>

For the foregoing reasons, "Plaintiff's Motion To Dismiss One's Counterclaim And To Strike Its Affirmative Defenses" will be granted in part and denied in part. A separate Order consistent with this Opinion will follow. Defendant is given leave to amend, within twenty (20) days after entry of the Order.

Date: February 11, 2011

                            _____/s/_____
                            Ellen Lipton Hollander
                            United States District Judge